773 So.2d 594 (2000)
SOUTHWEST FLORIDA WATER MANAGEMENT DISTRICT, Appellant,
v.
SAVE THE MANATEE CLUB, INC., and South Shores Properties Partners, Ltd., Appellees.
No. 1D99-4819.
District Court of Appeal of Florida, First District.
December 1, 2000.
*596 William S. Bilenky, Interim General Counsel; Karen E. West, Senior Attorney; Anthony J. Mutchler, Assistant General Counsel, Southwest Florida Water Management District, Brooksville, for Appellant.
Robert Goodwin, Maitland and Steven A. Medina of Steven A. Medina, P.A., Ft. Walton Beach, for Appellee Save the Manatee Club, Inc.
Frank E. Matthews and Eric T. Olsen of Hopping, Green, Sams & Smith, P.A., Tallahassee, for Appellee South Shores Property Partners, Ltd.
Kathryn L. Mennella, Palatka, for Amicus Curiae St. Johns River Water Management District.
Teri L. Donaldson, General Counsel and Robert G. Gough, Administrative Law Counsel, Tallahassee, for Amicus Curiae Florida Department of Environmental Protection.
Mary Ann Stiles and Rayford H. Taylor of Stiles, Taylor & Grace, P.A., Tallahassee, for Amicus Curiae Associated Industries of Florida, Inc.
Roy C. Young of Young, Van Assenderp, Varandoe & Anderson, P.A., Tallahassee, for Amicus Curiae The Florida Chamber of Commerce.
PADOVANO, J.
The Southwest Florida Water Management District appeals a final order declaring portions of rule 40D-4.051, Florida Administrative Code, invalid. The challenged sections of the rule purport to create certain exemptions from the environmental permitting requirements that otherwise apply to land developments within the District. We conclude that the sections of the rule at issue are an invalid exercise of legislative authority because they do not implement or interpret a specific power granted by the applicable enabling statute. Therefore, we affirm.
South Shores Partners, Ltd., applied to the District for a permit to develop a 720-acre tract of land in Southwest Hillsborough County. The property has an existing canal system that is adjacent to Tampa Bay but is separated from the Bay by an earthen berm. As a part of the project, South Shores proposed to excavate a portion of the land to build a connecting waterway between the canal system and the Bay. The Save the Manatee Club feared that this waterway would cause an increase in power boat traffic into the Bay and that the boat traffic would endanger the manatee and its habitat.
The impact a proposed development will have on wildlife is one of the factors the District must consider in determining whether to issue an environmental resource permit. However, South Shores took the position that it was not required to obtain an environmental resource permit to go forward with the proposed development. Instead, South Shores maintained that it was entitled to proceed with only a standard general permit for minor surface water management systems. Potential harm to wildlife is not among the criteria for issuing a standard general permit.
In support of its claim that the project requires only a general permit, South Shores relied on rule 40D-4.051, Florida Administrative Code. Sections (3), (5), and (6) of this rule grant exemptions from the environmental resource permitting requirements for various kinds of developments approved before October 1, 1984. The District agreed that South Shores was entitled to an exemption based on one or more of these grandfather provisions in the rule. In its conceptual permit, the District stated that it would not address the potential impact the project might have on the wetlands or on the fish and wildlife habitats.
The Save the Manatee Club filed a petition with the Division of Administrative Hearings on September 17, 1999, to invalidate the material parts of rule 40D-4.051. Among other points made in the petition, *597 the Club argued that the grandfather provisions in the rule were invalid because the enabling statute, section 373.414(9), Florida Statutes, does not authorize exemptions from the permitting requirements based solely on prior governmental approval.
South Shores intervened, and the case proceeded to a formal hearing. On December 9, 1999, after the parties had filed their proposed findings and conclusions, the administrative law judge entered a final order declaring sections (3), (5), and (6) of rule 40D-4.051 invalid. The judge concluded that the exemptions in these sections of the rule were invalid because they do not implement or interpret any specific power granted by the applicable enabling statute. The District filed a timely appeal to this court, and South Shores has adopted the District's position in the appeal.
Judicial review of final administrative orders is authorized by section 120.68(1), Florida Statutes. The standard of review that applies in a given case depends on the nature of the issue adjudicated. A decision that rests on a finding of fact must be affirmed on appeal if the finding is supported by competent substantial evidence. See § 120.68(7)(b), Fla. Stat. (1999); De Groot v. Sheffield, 95 So.2d 912 (Fla.1957). Likewise, a discretionary decision must be affirmed on appeal if the agency has not exceeded the scope of its discretionary authority. See § 120.68(7)(e), Fla. Stat. (1999). In contrast to these restrictive standards, the appellate courts are free to disagree with an agency on a point of law. Section 120.68(7)(d) provides in material part that the court may "set aside agency action" when it finds that the agency has "erroneously interpreted a provision of law." See Metropolitan Dade County v. Department of Envtl. Protection, 714 So.2d 512 (Fla. 3d DCA 1998); Schrimsher v. School Bd. of Palm Beach County, 694 So.2d 856 (Fla. 4th DCA 1997).
In the present case, the administrative law judge examined the rule in light of the enabling statute and determined that it was an invalid exercise of legislative power. He arrived at this conclusion by interpreting the 1999 version of section 120.52(8), the statute that defines and limits an agency's rulemaking authority. The adjudicatory process did not involve the resolution of a factual dispute or the exercise of discretion. Consequently, we are not required to defer to the administrative law judge. Because the case involves a pure issue of law, we review the order by the de novo standard of review.
An affected party may challenge an administrative rule on the ground that it is "an invalid exercise of delegated legislative authority." This phrase is defined in section 120.52(8), Florida Statutes as an "action that goes beyond the powers, functions, and duties delegated by the Legislature." Section 120.52(8) then lists seven circumstances in which a rule is an invalid exercise of delegated legislative authority:
(1) The agency has materially failed to follow the applicable rulemaking procedures or requirements;
(2) The agency has exceeded its grant of rulemaking authority;
(3) The rule enlarges, modifies, or contravenes the specific provision of law implemented;
(4) The rule is vague, fails to establish adequate standards for agency decisions, or vests unbridled discretion in the agency;
(5) The rule is arbitrary or capricious;
(6) The rule is not supported by competent substantial evidence;
(7) The rule imposes regulatory costs on the regulated person, county or city which could be reduced by the adoption of less costly alternatives that substantially accomplish the statutory objectives.
In addition to the seven enumerated grounds for challenging a rule, section 120.52(8) provides a set of general standards *598 to be used in determining the validity of a rule in all cases. These standards are contained in the closing paragraph of the statute.
The disposition of this case turns on the proper application of the 1999 revision of the closing paragraph, but, to put the issue in the proper context, we must first discuss the previous version of the statute and the applicable case law. In 1996, the closing paragraph of section 120.52(8) stated:
A grant of rulemaking authority is necessary but not sufficient to allow an agency to adopt a rule; a specific law to be implemented is also required. An agency may adopt only rules that implement, interpret, or make specific the particular powers and duties granted by the enabling statute. No agency shall have authority to adopt a rule only because it is reasonably related to the purpose of the enabling legislation and is not arbitrary and capricious, nor shall an agency have the authority to implement statutory provisions setting forth general legislative intent or policy. Statutory language granting rulemaking authority or generally describing powers and functions of an agency shall be construed to extend no further than the particular powers and duties conferred by the same statute. (emphasis added)
In St. Johns River Water Management District v. Consolidated-Tomoka Land Co., 717 So.2d 72 (Fla. 1st DCA 1998), we interpreted the phrase "particular powers and duties" to mean that the legislative authority for a rule must be identified in the applicable enabling statute. In summary of our decision on this point, we concluded that "[a] rule is a valid exercise of delegated legislative authority if it regulates a matter directly within the class of powers and duties identified in the statute to be implemented." Id. at 80.
After our decision in Consolidated-Tomoka, the Legislature changed the general standards set out in the closing paragraph of section 120.52(8), Florida Statutes. As revised in 1999, the closing paragraph reads:
A grant of rulemaking authority is necessary but not sufficient to allow an agency to adopt a rule; a specific law to be implemented is also required. An agency may adopt only rules that implement or interpret the specific powers and duties granted by the enabling statute. No agency shall have authority to adopt a rule only because it is reasonably related to the purpose of the enabling legislation and is not arbitrary and capricious or is within the agency's class of powers and duties, nor shall an agency have the authority to implement statutory provision setting forth the general legislative intent or policy. Statutory language granting rulemaking authority or generally describing powers and functions of an agency shall be construed to extend no further than implementing or interpreting the specific powers and duties conferred by the same statute. (emphasis supplied).
We recognize that the Legislature has the right to replace a judicially created test to determine the validity of a rule. Rulemaking is a legislative function, and as such, it is within the exclusive authority of the Legislature under the separation of powers provision of the Florida Constitution. See FLA.CONST. Art. II, § 3. An administrative rule is valid only if adopted under a proper delegation of legislative authority. See Askew v. Cross Key Waterways, 372 So.2d 913 (Fla.1978); Chiles v. Children A, B, C, D, E, and F, 589 So.2d 260 (Fla.1991). It follows that the Legislature is free to define the standard for determining whether a rule is supported by legislative authority.
One significant feature of the new statute is that it contains an additional statement of the factors that are not sufficient to justify the adoption of an administrative rule. Section 120.52(8) now provides that an agency shall not have authority to adopt a rule merely because *599 the rule "is within the agency's class of powers and duties." By including this language in the 1999 version of the statute, the Legislature has rejected the standard we adopted in Consolidated-Tomoka. An administrative rule must certainly fall within the class of powers and duties delegated to the agency, but that alone will not make the rule a valid exercise of legislative power.
Another important aspect of the new statute is that it modifies the standard for determining whether a rule is a valid exercise of legislative authority. Section 120.52(8) now provides that "an agency may adopt only rules that implement or interpret the specific powers and duties granted by the enabling statute." The parties have suggested various interpretations of this new language based on the legislative history of the statute, but we conclude that it would be improper to construe the statute beyond its terms. A court may resort to extrinsic aids in determining legislative intent only if the language used in a statute is ambiguous. See Holly v. Auld, 450 So.2d 217 (Fla.1984); Rhodes v. State, 704 So.2d 1080 (Fla. 1st DCA 1997). The limitation in section 120.52(8) to rules that implement or interpret specific powers and duties granted by the enabling statute is clear and unambiguous. Consequently, we have no reason to add our own view of the legislative intent.
In the absence of a special statutory definition, we may assume that the word "specific" was used according to its ordinary dictionary definition. See WFTV, Inc. v. Wilken, 675 So.2d 674 (Fla. 4th DCA 1996). The ordinary meaning of the term "specific" is "limiting or limited; specifying or specified; precise, definite, [or] explicit." See Webster's New World College Dictionary 1287 (3rd Ed.1996). "Specific" is used as an adjective in the 1999 version of section 120.52(8) to modify the phrase "powers and duties." In the context of the entire sentence, it is clear that the authority to adopt an administrative rule must be based on an explicit power or duty identified in the enabling statute. Otherwise, the rule is not a valid exercise of delegated legislative authority.
All of the litigants in this case agree that the term "specific" was not used in the 1999 version of the statute as a synonym for the term "detailed." We reached the same conclusion in Consolidated-Tomoka, in our interpretation of the 1996 statute, and that part of our decision appears to have survived.[1] The new law gives the agencies authority to "implement or interpret" specific powers and duties contained in the enabling statute. A rule that is used to implement or carry out a directive will necessarily contain language more detailed than that used in the directive itself. Likewise, the use of the term "interpret" suggests that a rule will be more detailed than the applicable enabling statute. There would be no need for interpretation if all of the details were contained in the statute itself.
It follows that the authority for an administrative rule is not a matter of degree. The question is whether the statute contains a specific grant of legislative authority for the rule, not whether the grant of authority is specific enough. Either the enabling statute authorizes the rule at issue or it does not. As the Florida Chamber of Commerce said in its brief, this question is one that must be determined on a case-by-case basis.
*600 Here, we conclude that the disputed sections of rule 40D-4.051 are an invalid exercise of delegated legislative authority because they do not implement or interpret any specific power or duty granted in the applicable enabling statute. Section 373.414(9), Florida Statutes, grants the District authority to issue environmental resource permits according to the statutory criteria established in the Florida Water Resources Act of 1972.[2] However, it expressly limits the District's authority to grant exemptions from the permitting requirements. In this regard, section 373.414(9) states, "Such rules may establish exemptions and general permits, if such exemptions and general permits do not allow significant adverse impacts to occur individually or cumulatively."
The exemptions granted by rule 40D-4.051 are not based on the absence of a potential impact on the environment. Instead the rule allows exemptions from the environmental resource permitting requirements based entirely on prior approval. Because section 373.414(9) does not provide specific authority for an exemption based on prior approval, the exemptions in the rule are invalid.
The District argues that section 373.414(9) expressly authorizes the re-adoption of rules that existed under prior laws, and that rule 40D-4.051 was originally adopted under a valid grant of legislative power contained in a previous environmental statute. This argument must fail, because the power to promulgate all new rules is limited by the statement in section 373.414(9) that the exemptions may be granted only if they do not "allow significant adverse impacts." Regardless of the history of rule 40D-4.051, the statute does not provide specific authority for an exemption based on prior approval.
We are also persuaded by a 1998 case which would likely be decided the same way under the version of the statute we apply here. In Department of Business and Professional Regulation v. Calder Race Course, Inc., 724 So.2d 100 (Fla. 1st DCA 1998), the companion case to Consolidated-Tomoka, we held that a statute authorizing the Division of Pari-Mutuel Wagering to conduct investigations did not provide specific authority for a rule allowing agents to conduct searches and seizures in pari-mutuel wagering facilities. Here, as in Calder, the enabling statute does not authorize the rule.
For these reasons, we hold that sections (3),(5), and (6) of rule 40D-4.051 are invalid. We agree with the administrative law judge that these sections of the rule do not implement or interpret a specific power or duty conferred by statute.
Affirmed.
ERVIN and LAWRENCE, JJ., CONCUR.
NOTES
[1] The Florida Supreme Court agreed with our conclusion in Consolidated-Tomoka that section 120.52(8) was not designed to require a minimum level of detail in the statutory language, even after the statute was revised in 1999. See Florida Dep't of Bus. and Prof'l Regulation, Div. of Pari-Mutuel Wagering v. Investment Corp. of Palm Beach, 747 So.2d 374 (Fla.1999). There, the court stated that the lesson drawn from our interpretation of the Administrative Procedure Act was that "[t]he Legislature will not micro-manage Florida's administrative agencies and the public's interest is served in encouraging agency responsiveness in the performance of their functions." Id. at 384.
[2] The District also relies on various other statutes in Chapter 373, but none of the other statutes can be said to provide specific authority for the rule at issue.